IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER  DIVISION

| | | |
|---|---|---|
| **DELUX INN** | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| V. | § | **CIVIL ACTION NO. 6:16-CV-01236-** |
| | § | **RWS-KNM** |
| | § | |
| **ARCH INSURANCE COMPANY** | § | |
| *Defendant* | § | |
| | § | |

## PLAINTIFF DELUX INN'S FIRST AMENDED COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

   **COMES NOW,** Plaintiff, Delux Inn, to complain of Defendant, Arch Insurance Company (hereinafter "Defendant").  In support of their claims and causes of action, Plaintiff would respectfully show unto this Honorable Court as follows:

### JURISDICTION & VENUE

1.  This Honorable Court has jurisdiction and venue is proper because (1) one or more acts or omissions forming the basis for liability occurred in Gregg County, Texas, (2) Defendant is a foreign insurance company that engages in the business of insurance in the State of Texas, and (3) Plaintiff's causes of action arise out of Defendant's business activities in the State of Texas.

2.  Venue lies in the U.S. Northern District of Texas, the district in which the claim arose, pursuant to 28 U.S.C. § 1391(b).

### PARTIES

3.  Plaintiff is an entity located in Gregg County, Texas.

4.  Defendant is a company engaged in the business of selling insurance policies and adjusting insurance claims. This includes selling residential policy number ANC000262200 (hereinafter "the Policy") associated with claim number 000012869890 (hereinafter "Claim"), both of which apply to Plaintiff's residence at issue in the present case. Defendant has appeared and answered through counsel and is before this Honorable Court for all purposes.

## FACTUAL BACKGROUND

5.  This matter revolves largely around a first-party insurance dispute regarding the extent of damages and amount of loss suffered to Plaintiff's property. In addition to seeking economic and penalty-based damages from Defendant, Plaintiff also seeks compensation from Defendant for damages caused by improper evaluation of the extensive losses associated with this cause.

6.  Plaintiff owns the Property, which is located 2004 St. Hwy 42 N, Kilgore, Texas 75662 (hereinafter "the Property"). The Property consists of two buildings, both covered by the insurance Policy.

7.  Prior to the occurrence in question, Plaintiff purchased the Policy from Defendant to cover the Property at issue for a loss due to a wind and hail storm, among other enumerated perils. The Policy is effective for the period May 15, 2015 through May 15, 2016 and covered Plaintiff during the date of loss in question. There is a $1,000.00 deductible.

8.  Pursuant to Plaintiff's obligation as a policyholder, Plaintiff made complete and timely payments of all insurance premiums.

9.  On or around March 8, 2016, the Property suffered incredible damage due to a wind and hail storm, causing interior water leaks. The Property's damage constitutes a covered loss under the Policy. Plaintiff's Property had not incurred water damage prior to the storm on or around March 8, 2016. This claim was reported to and acknowledged by Defendant on or around

March 10, 2016. Defendant retained the services of VeriClaim Inc. ("VeriClaim"), a third-party adjusting firm, to inspect the Property.

10. On March 14, 2016, VeriClaim received the assignment. On March 16, 2016, VeriClaim inspected the Property with Plaintiff present. VeriClaim admitted that it observed damages typical of a wind event as various shingles were blown off the roof or were creased in a manner indicative of recent hail damage. VeriClaim admitted to counting individual shingles for replacement. VeriClaim recommended the replacement of 126 individual shingles, allowing for 147.5 total shingles due to a 25% waste factor. However it is unclear as to how VeriClaim or Defendant would allow for a partial shingle.

11. On March 24, 2016, VeriClaim submitted its first report. VeriClaim reported the replacement cost value of the Property to be $3,226.07, less depreciation in the amount of $859.46 and the deductible in the amount of $1,000.00. Thus, VeriClaim recommended an actual cash value partial settlement in the net amount of $1,336.61 to be made to Plaintiff. Based on VeriClaim's report, Defendant intentionally and wrongfully refused to issue a full and fair payment for the covered loss as rightfully owed under the Policy. Defendant's esimate fails to place the Property in a pre-loss condition.

12. Defendant's estimate did not allow for adequate funds to cover the cost of repairs and therefore, grossly undervalued all of the damages sustained to the Property. As a result of this conduct, Plaintiff's claims were intentionally and knowingly underpaid.

13. Defendant's initial investigation forced Plaintiff to bear his own cost and hire a public adjuster to create a proper estimate of the damages. On or around April 25, 2016, Plaintiff's public adjuster inspected the Property. Following this inspection, Plaintiff's public adjuster estimated the damage to the Property to be $113,295.42. Based on the investigation, Plaintiff's public

adjuster recommended significant repairs to the roof of building 1, including a full roof replacement. Plaintiff's public adjuster recommended the removal of the ridge cap and approximately 91 squares of 3-tab, 25 year composition roofing material; the removal and replacement of: continuous ridge vent, drip edge, gutter/downspout, roof vents, and flashing; priming and painting exterior fascia; re-nailing decking; installing roofing felt and asphalt starter; and installing approximately 100 squares of 3-tab, 25 year composition shingle roofing material.

14. With respect to the roof of building 2, Plaintiff's public adjuster recommended significant repairs, including but not limited to: removal of the ridge cap and approximately 86 squares of 3-tab, 25 year composition roofing material; the removal and replacement of: continuous ridge vent, drip edge, gutter/downspout, roof vents, furnace vents, and flashing; priming and painting exterior fascia; re-nailing decking; installing roofing felt and asphalt starter; and installing approximately 95 squares of 3-tab, 25 year composition shingle roofing material.

15. With respect to the interior damage to the Property, namely the manager's suite, laundry room, Bedroom 1, Bedroom 2, Room 107, Room 110, Room 111, Room 114, Room 116, room 118, Room 124, and Room 125, Plaintiff's public adjuster recommended several repairs, including: pack-in, pack-out costs of contents, including bubble wrap, packing boxes; the removal and replacement of 5/8-inches of drywall and batt insulation, along with associated costs of protecting the walls and floors. Plaintiff's public adjuster also estimated for the priming and painting of the walls and ceiling.

16. Plaintiff's public adjuster not only recommended a full roof replacement for both buildings, but also estimated for a contractor to comply with the Occupational Safety and Health Administration ("OSHA"). OSHA dictates, when working on buildings with "unprotected

sides and edges" that "each employee on a walking/working surface (horizontal and vertical surface) with an unprotected side or edge which is 6 feet (1.8m) or more above a lower level **_SHALL_** be protected from falling by the use of guardrail systems, safety net systems, or personal fall arrest systems." Occupational Safety and Health Act of 1970 § 1926.501(b)(1) (emphasis added). This protection was intentionally not included or reflected within the scope of work provided by Defendant for Plaintiff's damages to the Property as an attempt to further deny Plaintiff benefits owed under the Policy.

17. On April 30, 2016, VeriClaim, Defendant's third-party independent adjuster, submitted its second report. The fact that VeriClaim issued a second report indicates VeriClaim conducted an unreasonable investigation during the first inspection. Subsequently, providing a second report is a further indication that Defendant's liability is more than reasonably clear. Instead, Defendant, individually and with its representatives, conspired to intentionally and wrongfully adjust the claim such that Plaintiff would not receive proper payment.

18. VeriClaim's second report indicates the replacement cost value of the Property as being $10,0000.00. However, the gross claim to the Property is reported to be $20,000.00 less the $1,000.00 deductible, for a net claim of $19,000.00.

19. VeriClaim's second report repeats the same paragraph of the first report, admitting that the Property sustained wind damages. However, VeriClaim wrongfully stated that the damages did not necessitate a full replacement. Instead, VeriClaim recommended the replacement of 126 individual shingles, allowing for 147.5 total shingles. However it is unclear as to how Defendant would allow for a partial shingle.

20. Further VeriClaim admitted the water leak in the laundry area and manager's living quarters was correlated directly to the area with the most shingle damage. Thus, VeriClaim's report required replacing the drywall.

21. VeriClaim contacted Plaintiff's contractors to discuss their bids. Both contractors stated a full roof replacement was warranted. VeriClaim informed Plaintiff that if its position were contested, Defendant would more than likely retain an engineer to further inspect the Property. Plaintiff did not formally contest VeriClaim's estimate. In an email on April 13, 2016, Defendant asked VeriClaim's representative who it would use as an engineer, Rimkus or Unified Building & Sciences, both of which are known as engineering companies who work mostly for insurance companies. In response, VeriClaim's representative stated to have whoever could get out there the fastest, admitting that Dallas-Fort Worth area had been hit with three separate storms in the past month of March. Subsequently, VeriClaim, with Defendant's authority, retained USBE, a biased, independent engineering firm, to conduct an inspection.

22. On April 22, 2016, UBSE inspected the Property. However, the report was not produced until on or around May 16, 2016. UBSE admitted to observing granule loss on isolated shingles, which were indicative of hail hits. However, it is unlikely that hail, such as hail that occurred on or around March 8, 2016 fell in isolation. UBSE wrongfully concluded that the roof is not damaged by hail due to the March 8, 2016 storm. UBSE wrongfully and intentionally stated that the property had incurred hail hits prior to the March 8, 2016 storm, indicated by hail hits to soft metals and granule loss. However, UBSE does not indicate which storm the hail damage occurred from or the standard by which it made its determination.

23. UBSE admitted the roof was wind damaged. Specifically, for the north building, a total of 51 shingles were damaged with an average of 3 un-adhered shingle tabs per test square. For the south building, a total of 108 shingles were damaged with an average of 9 un-adhered shingle tabs per test square. UBSE wrongfully stated that such shingles can be individually replaced.

24. On June 1, 2016, Defendant's third-party adjuster, VeriClaim, submitted a third report. VeriClaim admitted to revising its estimate of loss based on the engineering report and to include additional labor for a roofing contractor to be in the amount of $5,473.13. This admission highlights that VeriClaim's initial inspection and second report was unreasonable and inadequate to place the Property in a pre-loss condition. Moreover, by relying on an engineering report to revise its estimate and not conducting another investigation, VeriClaim admits that its own investigation is not independent. Further, such bad faith conduct in admitting to damage that had already existed and was intentionally not included in the estimate, Defendant demonstrates its intention to prevent Plaintiff from receiving Policy benefits despite the fact that Defendant's liability was reasonably clear.

25. Additionally, VeriClaim requested authority to release the engineering report to the Plaintiff and its representatives. However, Defendant failed to provide the documents as requested in the letter of representation. Despite Plaintiff's repeated requests, Defendant did not provide the documents until one week prior to the scheduled mediation on February 1, 2017.

26. VeriClaim's third report states that the replacement cost value of the building's damage is $10,000.00, less the deductible in the amount of $1,000.00, for a net claim of $9,000.00.

27. VeriClaim's third report admits that the Property sustained wind damages. However, VeriClaim wrongfully stated that the damages did not necessitate a full replacement. Instead, VeriClaim recommended the replacement of 159 individual shingles that were observed as

damaged by the engineer. Further, following the engineering report, VeriClaim acknowledged that there was 3-unadhered shingles per test square on the north building and 9-unadhered shingles per test square on the south building.

28. Further VeriClaim admitted the water leak in the laundry area and manager's living quarters was correlated directly to the area with the most shingle damage. Thus, VeriClaim's report required replacing the drywall.

29. Defendant's adjusters acted as authorized agents of Defendant. Defendant's adjusters acted within the course and scope of their authority as authorized by Defendant. Plaintiff relied on Defendant and its adjusters to properly investigate, evaluate, and adjust the claim regarding the Property and to issue payments to fix such damage. To date, proper payments have not been made regarding this claim.

30. All conditions precedent to recovery by Plaintiff have been met or have occurred.

31. All acts by Defendant were undertaken and completed by its officers, agents, servants, employees, and/or representatives. Such actions were done with the full authorization or ratification of Defendant and/or were completed in the normal and routine course and scope of employment with Defendant.

32. As a result of Defendant's wrongful acts and omissions, Plaintiff was forced to retain the professional services of McClenny Moseley & Associates, PLLC, who is representing Plaintiff with respect to the following causes of action.


## CAUSES OF ACTION

## COUNT ONE: BREACH OF CONTRACT

33. Plaintiff hereby incorporates by reference all facts and circumstances set forth under the foregoing paragraphs.

34. According to the Policy that Plaintiff purchased, Defendant had the absolute duty to investigate Plaintiff's damages and to pay Plaintiff's Policy benefits for the claim made due to the extensive damages caused by the wind and hail storm occurring on or around March 8, 2016. Defendant's conduct constitutes a breach of the insurance contract between Plaintiff and Defendant.

35. As a result of the wind and hail storm that occurred on or around March 8, 2016, Plaintiff suffered extreme exterior hail and wind damage and interior water damage. Despite objective evidence of such damage, Defendant has breached its contractual obligations under the Policy by failing to pay Plaintiff benefits related to the cost to properly repair Plaintiff's Property, as well as for related losses.  As a result of this breach, Plaintiff have suffered actual and consequential damages.

## COUNT TWO: VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

36. Plaintiff hereby incorporates by reference all facts and circumstances set forth within the foregoing paragraphs.

37. Specifically, Defendant's third-party adjuster and engineer intentionally refused to acknowledge objective evidence of hail hits and damage to the Property in order to create a biased estimate and report, which only recommends the removal and replacement of individual shingles. Moreover, only after an engineer was retained did the third-party independent adjuster revise its report to allow for more shingles to be replaced. This failure to properly investigate and reliance on the prior estimate is an attempt to prevent Plaintiff from receiving benefits under the Policy that they are rightfully owed.

38. Defendant and its representatives engaged in false, misleading, or deceptive acts or practices that constitute violations of the Texas Deceptive Trade Practices Act ("DTPA"), which is codified in the Texas Business and Commerce Code ("TEX. BUS. & COM. CODE"), including, but not limited to:

    a.  Using or employing an act or practice in violation of the Texas Insurance Code (TEX. BUS. & COM. CODE § 17.50(a)(4));

    b.  Unreasonably delaying the investigation, adjustment, settlement offer and prompt resolution of Plaintiff's claim (TEX. INS. CODE § 541.060(a)(2)-(5));

    c.  Failure to properly investigate Plaintiff' claim (§ 541.060(7)); and/or

    d.  Hiring and relying upon a biased adjuster, in this case Defendant's third-party adjuster, to obtain a favorable, results-oriented report, and to assist Defendant in severely underpaying and/or denying Plaintiff's damage claim (TEX. BUS. & COM. CODE § 17.46(31)).

39. Plaintiff is a consumer, as defined under the DTPA, and relied upon these false, misleading, and/or deceptive acts and/or practices, made by Defendant, to its detriment. As a direct and proximate result of Defendant's collective actions and conduct, Plaintiff has been damaged in an amount in excess of the minimum jurisdictional limits of this Court, for which Plaintiff are entitled to. All of the aforementioned acts, omissions, and failures of Defendant are a producing cause of Plaintiff' damages.

40. Because Defendant's collective actions and conduct were committed knowingly and intentionally, in addition to all damages described herein, Plaintiff is entitled to recover mental anguish damages and additional penalty damages, in an amount not to exceed three times such actual damages. § 17.50(b)(1).

41. As a result of Defendant's unconscionable, misleading, and deceptive actions and conduct, Plaintiff has been forced to retain the legal services of the undersigned attorneys to protect and pursue these claims on its behalf.  Accordingly, Plaintiff also seeks to recover its costs and reasonable and necessary attorneys' fees as permitted under § 17.50(d), as well as any other such damages to which Plaintiff may show themselves to be justly entitled by law and in equity.

**COUNT THREE: VIOLATIONS OF THE TEXAS INSURANCE CODE**

42. Plaintiff hereby incorporates by reference all facts and circumstances set forth within the foregoing paragraphs.

43. Defendant and its adjuster's actions constitute violations of the Texas Insurance Code ("TEX. INS. CODE"), Chapters 541 and 542, including but not limited to:

   a. Misrepresenting to Plaintiff pertinent facts or policy provisions relating to the coverage at issue (TEX. INS. CODE § 541.060(a)(1));

   b. Failing to attempt, in good faith, to effectuate a prompt, fair and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear (§ 541.060(a)(2)(A));

   c. Failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or for the offer of a compromise settlement of a claim (§ 541.060(a)(3));

   d. Failing to affirm or deny coverage of Plaintiff' claim within a reasonable time and failing within a reasonable time to submit a reservation of rights letter to Plaintiff (§ 541.060(a)(4));

   e. Refusing, to pay a claim without conducting a reasonable investigation with respect to the claim (§ 541.060(a)(7));

f.  Forcing Plaintiff to file suit to recover amounts due under the policy by refusing to pay all benefits due (§ 542.003(b)(5));

g.  Misrepresenting an insurance policy by failing to disclose any matter required by law to be disclosed, including a failure to make such disclosure in accordance with another provision of this code (§ 541.061(5));

h.  Engaging in false, misleading, and deceptive acts or practices under the DTPA (§ 541.151(2)); and/or

i.  Engaging in false, misleading, and deceptive acts or practices under the DTPA (§541.151(2));

j.  Failing to acknowledge receipt of the claim, commence any investigation of the claim, and request from the claimant all items, statements, and forms the insurer reasonably believes at that time will be required from the claimant no later than the 15th day after the receipt of notice of the claim (§ 542.055);

k.  Failing to notify the claimant in writing of the acceptance or rejection of a claim no later than the 15th business day after the insurer receives all items, statements, and forms required by the insurer to secure a final proof of loss (§ 542.056(a));

l.  Failing to state the reasons for rejection (§ 542.056(c));

m.  Failing to notify the claimant of the reasons that the insurer needs 45 days in additional time to accept or reject the claim (§ 542.056(d));

n.  Failing to pay a claim not later than the 5th business day after the date of notice of acceptance was made (§ 542.057); and/or

o.  Failing to pay a valid claim after receiving all reasonably requested and required items from the insured. (§ 542.058(a)).

44. For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefit that should have been paid pursuant to the Policy, court costs, and attorney's fees. Because Defendant acted knowingly, Plaintiff asks for three times his actual damages. § 541.152.

45. For failing to comply with the Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of their claim, as well as interest at the rate of eighteen (18) percent per annum of the amount of their claim as damages, together with attorney's fees. § 542.060.

## COUNT FOUR: BREACH OF THE COMMON LAW DUTY OF GOOD FAITH AND FAIR DEALING

46. Plaintiff hereby incorporates by reference all facts and circumstances in the foregoing paragraphs.

47. From and after the time Plaintiff's claim was presented to Defendant, the liability of Plaintiff to pay the full claim in accordance with the terms of the Policy was more than reasonably clear. However, Defendant has refused to pay Plaintiff in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied on to deny full payment. Defendant's conduct constitutes a breach of the common law duty of good faith and fair dealing. *See Viles v. Security National Ins. Co.*, 788 S.W.2d 556, 567 (Tex. 1990) (holding that an insurer has a duty to its insureds to "investigate claims thoroughly and in good faith" and an insurer can only deny a claim after a thorough investigation shows that there is a reasonable basis to deny that claim).

48. For breach of the common law duty of good faith and fair dealing, Plaintiff isq entitled to compensatory damages, including all forms of loss resulting from Defendant's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount Plaintiff owed, and/or exemplary damages for emotional distress.

## COUNT FIVE: WAIVER & ESTOPPEL

49. Plaintiff hereby incorporates by reference all facts and circumstances in the foregoing paragraphs.

50. Defendant has waived and is estopped from asserting any defenses, conditions, exclusions, or exceptions to coverage not contained in any Reservation of Rights or denial letters to Plaintiff.

## DAMAGES

51. Defendant's acts have been the producing and/or proximate cause of damage to Plaintiff that far exceeds the minimum jurisdictional limits of this Honorable Court.

52. For breach of contract, Plaintiff is entitled to regain the benefit of Plaintiff's bargain, which is the amount of Plaintiff's claim, together with attorneys' fees.

53. For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefit that should have been paid pursuant to the Policy, court costs and attorneys' fees. Plaintiff asks for three times Plaintiff's actual damages because Defendant acted knowingly and intentionally. TEX. INS. CODE § 541.152.

54. For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of Plaintiff's claim, interest on the claim at the rate of eighteen (18) percent per year, together with attorneys' fees. § 542.060.

55. For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, and/or exemplary damages for emotional distress.

56. For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the law firm whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

## ADDITIONAL DAMAGES & PENALTIES

57. Defendant's conduct was committed knowingly and intentionally. Accordingly, Defendant is liable for treble damages under the Deceptive Trade Practices Act, as well as all provisions of the Texas Insurance Code. TEX. BUS & COM. CODE §17.50(b)(1).

## ATTORNEY'S FEES

58. In addition, Plaintiff is entitled to all reasonable and necessary attorney's fees pursuant to the Texas Insurance Code, Texas Deceptive Trade Practices Act, and TEX. CIV. PRAC. & REM. CODE §§ 38.001-.005. Plaintiff thereby requests that the Court and jury award their attorney's fees and expenses.

## JURY DEMAND

59. Plaintiff demands a jury trial pursuant to FED. R. CIV. P. 8(b).

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be entered against Defendant and that Plaintiff be awarded the actual damages, consequential damages, pre-judgment interest, additional statutory damages, post-judgment interest, reasonable and necessary attorney's fees, court costs and for all other such relief, general or specific, in law or in equity, whether pled or unpled within this First Amended Complaint.

For all reasons set forth above, Plaintiff prays he be awarded all such relief to which he is due as a result of the acts of Defendant, and for all such other relief to which Plaintiff may be justly entitled.

RESPECTFULLY SUBMITTED,

*/s/ Kelley A. Seid*
MCCLENNY, MOSELEY & ASSOCIATES, PLLC
James M. McClenny
State Bar No. 24091857
Federal I.D. No. 2764142
James@mma-pllc.com
J. Zachary Moseley
State Bar No. 24092863
Federal I.D. No. 2706476
Zach@mma-pllc.com
Kelley A. Seid
State Bar No. 24102480
Kelley@mma-pllc.com
411 N. Sam Houston Parkway E., Suite 200
Houston, Texas 77060
Phone: 713-334-6121
Facsimile: 713-322-5953
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2017, a true and correct copy of the foregoing was served on all counsel of record, via the Court's electronic filing system and/or facsimile, pursuant to Federal Rule of Civil Procedure 5(b), as follows:

**ZELLE LLP**
Kristin C. Cummings
Texas Bar No. 24049828
kcummings@zelle.com
Raven M. Atchison
Texas Bar No. 24073864
ratchison@zelle.com
901 Main Street, Suite 4000
Dallas, Texas 75202
Phone: 214-742-3000
Facsimile: 214-760-8994
***Counsel for Defendant***

*/s/ Kelley A. Seid*
Kelley A. Seid